## VICK V. SHINN.

DURESS OF GOODS:    *Overpayment by mortgagor to protect property from sale.*

A bare threat by a mortgagee of personal property, with power of sale, to enforce the payment of a sum in excess of the amount due on the mortgage debt, by taking the property from the possession of the mortgagor and selling it, pursuant to a provision of the mortgage, is not sufficient to create duress of goods and an over-payment made because of such a threat, although made under protest, is not, in a legal sense, compulsory, and the amount of the same cannot be recovered back.

APPEAL from *Pope* Circuit Court.

G. S. CUNNINGHAM, Judge.

*W. C. Ford* for appellant.

This was not a *voluntary* payment, but the appellant paid under duress, and under a state of circumstances which entitle him to recover. *Bishop on Cont.* (*1878*), secs. *143–5, 247; 10 How.* (*U. S.*), *242; 1 Pars. Cont.* (*1883*), bot. p. *443 to 446; 7 B. & C., 73; 4 D. & R., 283; 9 Johns., 375; id., 201; 106 Mass., 1; 40 Mich., 367; 43 Ark., 365; 29 N. W. Rep., 418; 114 Mass., 364; 46 Ark., 358; 15 Am. Rep., 323, and notes.*

*Jeff Davis* for appellee.

1.  The payment was made voluntarily, with full knowledge of all the facts, without either fraud, mistake or duress, one of which is necessary before the payment can be recovered.

2.  It was an adjustment of a disputed claim between the parties, and falls within the rule of *46 Ark., 217.*

See *Bish. Cont.*, sec. *239; ib.,* sec. *245–6; 50 Ala., 437; 2 Metc.* (*Ky.*), *445; 23 Mich., 105; 18 Smith* (*Pa.*), *486; 7 Tex.,*

*584; 23 Pick., 167; 12 Wal , 232–243; 40 Ill., 514; 20 Penn. St., 421; 4 Gill., 425; 5 Gill., 244; 2 Rich. (S. C.), 317; 8 Rich., 260; 5 Kans., 412; 15 Minn., 35; Taylor v. Board, etc., 31 Penn. St.; 7 Cush., 125; 5 id., 115; 12 Pick., 7–14; 34 Ala., 400; 46 Ind., 552; 4 Metc., 481; 2 Ind., 496; 16 id., 29; 17 id., 336–326; 10 Peters, 137; 5 Leigh, 305; 41 Ind., 312; 9 Johns., 201; 58 Ind., 143; Pars. ou Cont., 7th ed., vol. 1, bot. p. 444; 18 Ark., 214; 33 id., 156; 23 Pick., 167; 6 S. & M., 13; 49 Me., 429; 6 Allen, 58; 11 A. & E., 983; 43 Ark., 172; 43 Vt., 410; 7 Ire., 120; 8 id., 441; 5 Jones (N. C.), 47; 2 Smith's L. C., 237; 126 Mass., 485; Cooley on Torts, 487.*

COCKRILL, C. J.   Vick brought his action against Shinn to recover money which he alleged had been received for his use and benefit.   The dispute was about an over-payment made by the plaintiff to the defendant upon the purchase of a lot of corn.   The corn bargained for was 500 bushels at seventy-five cents a bushel.   The plaintiff made his note for the amount, and to secure payment, executed a mortgage upon some mules and wagons and a lot of lumber.   Seventy-seven bushels of the corn, as the court finds from the testimony, were never in fact delivered, but the defendant (Shinn) insisted upon payment of the full amount of the note after it fell due, and informed the appellant that he would take possession of the mortgaged property and sell it, in pursuance of a provision of the mortgage authorizing a sale in case of default in payment, unless the full amount demanded was paid.   The case was tried in the Circuit Court without a jury; the court found that the payment was voluntary, and gave judgment for the defendant. The motion for a new trial questions only the adequacy of the proof to sustain the findings and judgment.   There is no conflict in the proof, and the question is simply, was the payment voluntary?

DURESS OF
GOODS:

Payment un-
der.

The doctrine established by the authorities is that "a payment is not to be regarded as compulsory unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid."

This language of the Court of Appeals of Maryland is quoted with approval by the Supreme Court of the United States. *Mayor, etc., of Baltimore v. Lefferman, 4 Gill., 425; Radich v. Hutchins, 95 U. S., 210.*

The coercion produced by what is sometimes called duress of goods exists, says Judge Cooley, speaking for the Supreme Court of Michigan, "when one is compelled to submit to an illegal exaction in order to obtain his goods from one who has them in possession, but refuses to surrender them unless the exaction is submitted to." *Hackley v. Headley, 45 Mich., 569.* The remedies afforded by the courts are presumed to be inadequate to the necessities of such an occasion, and the aggrieved party is not forced to submit to the law's delay, but may pay the exaction and rely upon the effect of this species of duress to get it back. The coercion is effectual when produced by menace, as well as by actual duress. It is sufficient, say the court in *Radich v. Hutchins, sup.,* when there is " some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has *no other means of immediate relief* than by making the payment." See, too, *Burr v. Burton, 18 Ark., 233.* It will be seen from this that there must be a pressing and controlling necessity upon the party making the payment to render it compulsory or involuntary. The illegal demand must be accompanied by the apparent power at least, to carry the threat of enforcement into immediate execution. *Town of Ligonier v. Ackerman, 46 Ind., 552; Bramagin v. Tillinghast,*

*18 Cal., 265.* When one so holds the rod that the weak needs bow to it, the law commiserates the submission.

But such is not the present case. The mortgaged chattels were in the debtor's possession. There was no circumstance or threat of the use of violence or force to take them. The debtor voluntarily met his creditor in the office of the attorneys who held the note for collection to effect a settlement. He admitted a liability of about $300, but claimed a credit on the note to the extent of the corn that was not delivered to him. A small credit was conceded, but less than he contended for, and less than the Circuit Court found that he was really entitled to. The mortgagee would not agree to his terms of settlement, and finally informed him that he would take possession of and sell the mortgaged property, if he did not pay the full amount demanded. The mortgagee's attorney repeated the same thing to him. He protested throughout that the excess over the amount he was willing to pay was unjust, and that he did not owe it, but he agreed to pay the whole, and after having time to arrange to raise the money, caused it to be paid, saying he did it to protect his property from sale, and that he would sue for and recover the excess over his just debt.

There was no compulsion, in a legal sense, in this. It was incumbent upon the mortgagee, before he could effect a legal sale of the mortgaged goods, to get possession of them, and if this could not be done peaceably, he must have resorted to the action of replevin for the purpose. But it is not shown that he had the power or opportunity to put his threat of seizing the property into execution against the will of the debtor; and a threat to enforce a demand by suit is not sufficient to create duress of goods. If there is in fact a cause of action when the threat is made, the plaintiff, by bringing suit, would only enforce a legal right; if there was no cause of action or a demand for more than is due, the party

threatened should exercise the ordinary degree of firm-
ness which the law presumes every man to possess, and
meet the issue of the unjust suit.   One cannot be heard to
say that he had the law with him, but feared to meet his ad-
versary in court.   It is only when he has no chance to be heard
that he can pay under protest and afterwards recover.   *Mar-
riott v. Hampton, 2 Smith's Lead Cases (1 Pt.), 455*.   By proper
defense to the action of replevin the plaintiff could have pro-
tected himself against surrendering his property without pay-
ing more than the mortgage debt.   *Jones Chat. Mort., sec. 635.*
Having chosen to make terms with his creditors instead of
pressing his rights when there was nothing to prevent him from
so doing, he could not afterwards change position and com-
plain that the terms were forced upon him.   *Wald's Pollock
on Cont., 554.*   A protest is of no avail, except in case of
duress of some sort, and then it only tends to show that the
payment was the result of the duress.   *Springfield & Memphis
Ry. v. Allen, 46 Ark., 217; Marriott v. Hampton, sup., p. 456.*

The cases of *Drew County v. Bennett, 43 Ark., 364,* and
*Town of Magnolia v. Sharman, 46 id., 358,* do not sustain the
appellant's position.   The plaintiff in each of those cases was
entitled to receive a license to sell liquor and enjoy the privi-
lege it afforded upon payment of a stated sum, but the officers
in authority refused in each case to deliver the license unless
a larger amount was paid.   They paid the exactions, and were
permitted to recover.   The decisions are distinctly referable
to the principle which permits a recovery in case of an extor-
tion laid as a condition to the exercise of a legal right.
*Hackley v. Headly, sup.; McPherson v. Cox., 86 N. Y., 472.*

Several text writers have stated the rule to be that when
a mortgagee, with power of sale, threatens to use his power
unless over-paid, the over-payment may be recovered in an
action for money had and received.   *2 Whart. Cont., sec. 737;
Jones on Mort., secs. 903, 1819.*   But the broad statement of

the text is not supported by any adjudicated case cited. The case of *Close v. Phipps, 7 Manning & Granger, 585 (S. C. 49, Eng. C. L., 585),* is mainly relied upon to sustain the position. The case is meagerly reported, and in Chitty's work on Contracts it is placed in that class of cases where an exaction is submitted to in order to recover the possession of property, inasmuch as it appears that the mortgagee's agent refused to deliver up the title deeds of the mortgaged property. *2 Chitty Cont., 941–2.* The opinion, also, without argument, likens it to a cause of a common carrier withholding goods upon a demand of exorbitant freight charges. Besides, the case related to real estate, no act to gain possession of which before sale was necessary.

The court's finding of facts is sustained by the evidence, and the judgment is affirmed.