TURPIN *v.* ANTONIO.

Opinion delivered May 15, 1922.

1. PAYMENT—DECREES—RECOVERY.—Where, under a lease assignable only with the written consent of the lessor, which was not to be charged for, the lessee under protest gave the lessor a check to secure his written consent to assignment of the lease, with the intention, which failed, of stopping payment, he could not recover such payment, it being voluntary.

2. PAYMENT—WHEN INVOLUNTARY.—To constitute the coercion or duress which will be regarded as sufficient to make a payment

involuntary, there must be some actual or threatened exercise of power, possessed or believed to be possessed by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*C. T. Cotham* and *Houston Emory,* for appellant.

The complaint states a cause of action, 110 Ark. 578; 29 Minn. 238, 13 N. W. 42.

The payment of the money by appellant was not voluntary, but was extorted from him, and only made to save himself financial loss. Appellee's oral consent to transfer the lease was sufficient, although the lease required the transfer to be in writing. 130 Minn. 223; 65 Wash. 359; 148 Wis. 63.

Appellee is estopped because of the fraud perpetrated by him. 10 R. C. L. p. 691.

The demand by appellee amounted to duress, entitling appellant to relief. Elliott on Contracts, Vol. 2, pages 635-6; 41 L. R. A. 609.

*Martin, Wootton & Martin,* for appellee.

The payment by appellant was voluntary, and recovery can not be had by him. 49 Ark. 70; 74 Ark. 270; 143 Ark. 435; 145 Ark. 185.

SMITH, J. Appellant, who was the plaintiff below, filed a complaint containing substantially the following allegations: that on June 10, 1919, defendant Antonio, as lessor, executed to one Peter Brown a lease for the term of four and one-half years of the ground or first floor of a certain building in the city of Hot Springs. This lease contained a clause reading as follows: "And the said tenant covenants that he will not sell, assign, or underlet or relinquish said premises without the written consent of the lessor, the lessor agreeing not to make any charge for such consent." That, pursuant to said clause, the lease had been assigned a number of times, as shown by the indorsements on the original lease, and the defendant, in

each instance, gave his written consent to the assignment without making charge therefor, and through the last of such assignments plaintiff became the owner of the lease. That an opportunity offered for plaintiff to sell the lease at a profit; but, before closing the trade, he applied to defendant for his approval, and obtained from him his promise to give his written consent to said assignment, and in reliance upon that promise plaintiff closed the contract for the sale of the lease. Thereafter plaintiff requested defendant to indorse his written consent to the assignment of the lease, but defendant, in violation of his promise, and in violation of the covenant set out above, wrongfully refused to give such consent unless plaintiff would pay him the sum of $300. That plaintiff protested, but, in order to protect his deal, he gave defendant, on June 21, 1921, a check on a local bank for $300, but promptly notified the bank to stop payment of the check, but the defendant had caused the bank to guarantee the payment of the check, and the check was paid to defendant. After reciting these facts, plaintiff alleged that the money had been extorted from him wrongfully, and he prayed judgment therefor.

A demurrer to the complaint was sustained; and this appeal is prosecuted to review that order and judgment.

We think the demurrer to the complaint was properly sustained. There was no such compulsion as entitled the plaintiff to recover his money back. It appears, from the complaint itself, that plaintiff was endeavoring to obtain the written consent of defendant by pretending to acquiesce in his demand for the payment of the $300 without, in fact, doing so. He may have intended by this conduct to secure what he regarded as a plain legal right; but the fact remains that he voluntarily paid the money.

In 2 Elliott on Contracts, § 1384, it is said: ''It is well settled, however, that money extorted or involuntarily paid under duress or unlawful compulsion may be recovered. To enable the party making the compulsory payment to recover it, the compulsion must have been il-

legal, unjust or oppressive. To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, there must be some actual or threatened exercise of power possessed or believed to be possessed by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment. As stated by the Court of Appeals of Maryland, the doctrine established by the authorities is, that 'a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid'."

Here plaintiff alleges that he had a legal right which was denied him, and to secure its enforcement he made the payment demanded. The law of that situation is very tersely expressed by Chief Justice COCKRILL in the case of *Vick* v. *Shinn*, 49 Ark. 70, as follows: "One cannot be heard to say that he had the law with him, but feared to meet his adversary in court. It is only when he has no chance to be heard that he can pay under protest and afterwards recover." See also *Satchfield* v. *Laconia Levee Dist.*, 74 Ark. 270; *Odell & Kleiner* v. *Heinrich*, 143 Ark. 435; *Craig* v. *Frauenthal*, 145 Ark. 185.

Judgment affirmed.