SILOAM SPRINGS ICE COMPANY *v.* McCULLOCH, EXECUTRIX.

4-6236                                      148 S. W. 2d 327

Opinion delivered March 10, 1941.

*Vol T. Lindsey,* for appellant.

*Duty & Duty,* for appellee.

McHANEY, J.   Appellant, Siloam Springs Ice Company, was a domestic corporation in Siloam Springs for

many years prior to its dissolution in June, 1937. Its capital stock consisted of 2,000 shares of the par value of $25 each, of which the late Will D. Sweet, husband of appellant, Edith G. Sweet, owned 1,374 shares, the latter owned 625 shares and Ed C. McCulloch, now deceased, owned 1 share. In 1923 Mr. McCulloch loaned the corporation $25,000, for which bonds were issued, secured by a mortgage on the company property. In 1932, there being $17,500 of this indebtedness unpaid, same was refunded in this amount, payable over a period of twelve years at 8 per cent., for which coupon bonds were issued. At that time the corporation was delinquent in interest payments in the sum of $1,500 and a separate note was given Mr. McCulloch for this amount. On June 16, 1936, Will D. Sweet died, and three days later the ice plant suffered a serious fire loss, covered by insurance with a loss-payable clause in favor of Mr. McCulloch. Out of the amount realized from the insurance, repairs were made to the ice plant and the sum of $1,000 was paid on the $1,500 note and there was left a balance of the insurance money in the sum of $321.39.

After the death of her husband, appellant, Edith G. Sweet, and her children, the other appellants, owned all the stock in the corporation, except one share, and it had been indorsed in blank and delivered to her. She decided to sell the assets of the corporation and liquidate its affairs. To this end she began negotiations with prospective purchasers. She applied to Mr. McCulloch to know what amount he would be willing to accept in full settlement of the debt due him, and on December 30, 1936, at a conference in the office of her attorney he agreed to accept the principal sum due on the bonds, $17,500, if paid within 90 days from that date, together with the $321.39 in the insurance account, and a written statement in the form of a letter to the Siloam Springs Ice Company was executed by him and delivered to her attorney. On January 5, 1937, appellants, Siloam Springs Ice Company and Mrs. Sweet, entered into a written contract with Roy A. Drum of Ft. Smith to sell to him the ice plant property and a small tract adjacent thereto belonging to her for $32,500, which contract was ratified by the

stockholders and directors on January 7, and the president and secretary were authorized and directed, on a resolution by Mr. McCulloch, to make a deed and carry out the terms of the contract.

Shortly after the execution and delivery of the letter above mentioned in which Mr. McCulloch agreed to accept $17,500 in full of his debt, he figured up the accrued and past-due interest on his bonds and found that it amounted to about $3,400. He immediately notified Mrs. Sweet's attorney, Mr. A. L. Smith, that he could not stand such a loss, and that he had offered to accept the principal debt as payment in full on the assurance of Mrs. Sweet that the interest did not exceed $1,000 or $1,500. A conference was called in his office by said attorney for January 18, where the parties met and had considerable argument over the matter, and finally Mr. McCulloch agreed to stand a loss of $1,000 on the interest and to deduct that amount from the total due him, as also the payments already made. Thereafter, on January 20, 1937, all the interested parties, including the purchasers, met in the Bratt Wasson Bank of Siloam Springs to close the deal and make all transfers. The purchasers paid the purchase money in the form of two drafts, one of which, for $19,349.05, was payable to Mr. McCulloch and Mrs. Sweet, which they both indorsed, and same was deposited to his credit in payment of all indebtedness due him from the ice company. Thereafter, on January 24, 1938, appellants brought this action to recover from Mr. McCulloch judgment for $1,848.05, which is the difference between the amount he agreed to accept in the letter of December 30, 1936, and the amount paid him on January 20, 1937. It is charged that appellants were forced to and did pay to Mr. McCulloch $1,848.05 more than he had agreed to accept under said contract through duress and compulsion and through fear of liability to the purchasers for breach of their contract. He defended on a general denial and a plea of a new agreement after the one of December 30, 1936, and that the sum paid him, $19,348.05, was a voluntary payment, made pursuant to the new agreement, and that it constitutes a complete accord and satisfaction.

Trial resulted in a decree dismissing the complaint for want of equity, on a finding that the payment made was voluntarily made and without duress or coercion.

We think this finding and the decree are sustained by the weight of the evidence. Assuming, without deciding as the trial court apparently held, that Mr. McCulloch's agreement of December 30, 1936, to accept, in full payment of the debt and interest due him, $17,500 was valid and binding on him, because supported by a valuable consideration, and that he breached same, still we are of the opinion that a new agreement was reached on January 18, 1937, when the parties met in Mr. Smith's office and that such new agreement was reaffirmed and carried out two days later when payment was made, without compulsion or coercion in a legal sense. The argument that occurred was on January 18, in Mr. Smith's office when Mrs. Sweet was advised that the agreement of December 30 would not be carried out, because made under a mistake of fact as to the amount of delinquent interest. When asked what he would be willing to do, he answered he would be willing to stand a loss of $1,000 on the interest, and this was apparently assented to by Mrs. Sweet. At the time of settlement on the 20th of January, he was paid his principal and interest less this amount, and the deal was closed. There was a controversy between them as to facts. They met and settled the controversy as they had a right to do. In *Odell & Kleimer* v. *Heinrich,* 143 Ark. 435, 221 S. W. 865, a case very much in point, the court, speaking through the late Chief Justice McCulloch, said: "Without undertaking to interpret the contract so as to settle that dispute between the parties, we hold that the payment made by appellants was voluntary, and ended the controversy, which cannot again be renewed. There was no fraudulent concealment of facts which induced the payment, nor was there any duress which would afford grounds for disregarding the payment. There are decisions of this court which settle the case against appellant's contention, holding that the payment was, under the circumstances, not one made under duress but was voluntary, and the controversy cannot be again reopened. *Vick*

v. *Shinn,* 49 Ark. 70, 4 S. W. 60, 4 Am. St. Rep. 26; *Shirey* v. *Beard,* 62 Ark. 621, 37 S. W. 309; *Sachfield* v. *Laconia Levee District,* 74 Ark. 270, 85 S. W. 409; *Tancred* v. *First National Bank of Fort Smith,* 130 Ark. 520, 197 S. W. 1178.

"In the case of *Vick* v. *Shinn, supra,* the court tersely said that 'one cannot be heard to say that he had the law with him, but feared to meet his adversary in court.' This statement applies to the present case, for appellants owned the land and were not compelled to yield to appellee's contention as to the proper interpretation of the contract, if erroneous. The fact that they were under obligations to close the deal with Stroh does not constitute such duress as would justify the courts in disregarding the settlement of the controversy."

So, here, the fact that appellants were under obligation to close the sale of the ice plant to Drum and his associates "does not constitute such duress as would justify the courts in disregarding the settlement of the controversy."

The decree is correct, and it is accordingly affirmed.